THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
JOE S. SADDLER, Defendant-Appellant.

First District (2nd Division)   No. 1—90—2495

Opinion filed June 16, 1992.

Rita A. Fry, Public Defender, of Chicago (Greg Koster, Assistant Public Defender, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb and Brian Clauss, Assistant State's Attorneys, of counsel), for the People.

JUSTICE McCORMICK delivered the opinion of the court:

Defendant, Joe S. Saddler, appeals from his conviction and sentence for robbery. We affirm the conviction, vacate the sentence, and remand.

On April 26, 1989, Lonnie Kato robbed Irma Ramirez while she was in her car in front of her home. Defendant admitted that he and Kato entered Ramirez's car at the time of the robbery. The State charged defendant with armed robbery. His defense was that he was too high on drugs and alcohol to understand what Kato was doing, and once he figured it out, he tried to stop Kato from hurting Ramirez.

Near the end of jury selection, defendant moved for a mistrial based on the prosecutors' use of peremptory challenges to exclude three black venirepersons from the jury. In response to the motion, the prosecutors pointed out that they had also accepted three blacks, and they gave their reasons for challenging the three that they excused.

The prosecutors said they excused Mary Rice because she worked for Business and Professional People for the Public Interest, a public interest law firm. One prosecutor said that Charles Smith "appeared to exhibit certain sort of reactions *** to the interviewing of other jurors by the Court, and given certain facial gestures *** we felt that we were going to excuse him." Defendant pointed out that Charles Smith had qualifications and background very similar to those presented by Kenneth Crafton, but the State accepted Crafton. The prosecutors excused Gloria Cameron because her husband was disabled, so they thought she would be "rather sympathetic as a juror."

The court denied defendant's motion. Following trial the jury returned a verdict of guilty on the lesser included offense of robbery.

Both at trial and at the presentencing hearing defendant stated that he had a history of drug and alcohol abuse, and he had been in several substance abuse treatment programs. According to the presentence investigation report, defendant

"indicated that he suffers from delirium tremens and hallucinations and that he defin[i]tely has an alcohol problem.

[Defendant] also indicated that he has a drug problem ***. [Defendant]'s drug menu includes crack, marijuana, karachee, heroi[n], valiums, acid mushrooms and much more."

The report further noted that defendant suffers from high blood pressure, hypertension, ulcers, asthma and blackouts, and he had attempted suicide.

The court made no comment on the evidence of drug or alcohol problems, and the court did not mention treatment when it sentenced defendant to seven years in prison.

## I

The parties agree that because the prosecution had offered explanations for its challenges, the issue of whether defendant presented a *prima facie* case is moot. (*Hernandez v. New York* (1991), 500 U.S. 352, 114 L. Ed. 2d 395, 111 S. Ct. 1859.) Therefore the record before us is adequate for this appeal despite the lack of any direct statement of the race of all members of the venire. *Cf. People v. Rosa* (1990), 206 Ill. App. 3d 1074, 1080, 565 N.E.2d 221, 225 (for appellate review to determine whether defendant presented a *prima facie* case of discrimination, the record must disclose the race of the venirepersons).

When the prosecution gives reasons for peremptorily challenging black venire persons,

> "the trial court must make 'a sincere and reasoned attempt to evaluate the prosecutor's explanation in light of the circumstances of the case.' (*People v. Hall* (1983), 35 Cal. 3d 161, 167, 672 P.2d 854, 858, 197 Cal. Rptr. 71, 75.) Because this determination is a matter of fact, turning largely on questions of credibility, the trial court's finding must be afforded great deference [citation] and will only be reversed if against the manifest weight of the evidence [citation]. We are also mindful, however, that the exclusion of even just one minority venireperson on account of race is unconstitutional and would require reversal of the conviction below." *People v. Harris* (1989), 129 Ill. 2d 123, 174-75, 544 N.E.2d 357, 380.

Defendant accepts the prosecution's reason for dismissing Mary Rice, but defendant contends that the reasons given for dismissing Charles Smith and Gloria Cameron are pretextual. As at trial, defendant here points out that Charles Smith had a very similar background to Kenneth Crafton, whom the State accepted. The similarities in their backgrounds are irrelevant because the State did not cite Smith's background as a reason for excusing him.

■ The prosecutors stated that they excused Smith because of the manner in which he showed his disgust for the offensive racist statements made by several members of the venire on *voir dire*. The court commented that Smith's reactions were not inappropriate, given

the nature of the comments, but the court could understand why the prosecution would rather not have on the jury someone who reacted so strongly to the racist statements.

In *People v. Talley* (1987), 152 Ill. App. 3d 971, 987, 504 N.E.2d 1318, 1327, the prosecutor explained that he excused a black venireperson because the prosecutor was "not too happy" with the person's demeanor. The trial court rejected a *Batson* challenge to the jury selection, and this court affirmed, finding that the prosecutor gave

> "a clear and reasonably specific explanation of legitimate reasons for exercising the challenge[ ] ***. *** Upon reading of the entire record and argument and in view of the deference to be accorded to the trial judge's finding in such matters, we reject defendant's argument." (*Talley*, 152 Ill. App. 3d at 987, 504 N.E.2d at 1328.)

Similarly, we defer to the trial court's finding regarding the credibility of the prosecutor's explanation for excusing Smith.

The prosecutor explained that the State excused Cameron because she was married to a disabled person, so she was likely to be too sympathetic, ostensibly to the defendant rather than the complaining witness. Although defendant did not mention the comparison in the trial court, he now points out that Karen Wilson, a juror accepted by the State, was a learning disabilities teacher who was just as likely as Cameron to be sympathetic.

The State first answers that the record does not affirmatively show Wilson's race, but the State did not mention her in its list of the three blacks who became jurors. The record fairly supports an inference that Wilson is not black.

A defendant may show that reasons for excusing a venireperson are pretextual by showing that the "challenge [is] based on reasons equally applicable to [a] juror who [was] not challenged." (*State v. Slappy* (Fla. 1988), 522 So. 2d 18, 22.) But merely showing some similarities between jurors excused and jurors accepted is not sufficient.

> "Though a part of the prosecutor's explanations may have been applicable to white jurors who were not challenged, the white jurors may have, in some other respect, exhibited a trait which the prosecutor reasonably could have believed would make him or her desirable as a juror." *People v. Young* (1989), 128 Ill. 2d 1, 23-24, 538 N.E.2d 453, 458-59.

In this case, Wilson had been the victim of a crime, but neither Cameron nor any of her family or close friends had been crime victims. The prosecutors indicated in argument concerning Smith that they considered crime victims desirable as jurors. Therefore, the fact

that Wilson was a crime victim may have sufficiently offset her undesirability as a "sympathetic" person in the prosecutors' eyes. The State's failure to mention this reason for dismissing Cameron in argument on the motion for mistrial may be attributed solely to defendant's failure to point out the comparison to Wilson at that argument.

■ In view of the deference this court must afford the trial court in determining whether the prosecutors' reasons for excusing venirepersons are pretextual, we cannot say that the trial court's findings were contrary to the manifest weight of the evidence, and therefore the court did not commit reversible error by denying the motion for mistrial. See *Harris*, 129 Ill. 2d at 175, 544 N.E.2d at 380.

## II

■ According to the Illinois Alcoholism and Other Drug Dependency Act (the Act), absent certain exceptions not present in this case:

> "An addict or alcoholic who is *** convicted of a crime may elect treatment under the supervision of a licensed program designated by the Department ***." Ill. Rev. Stat. 1989, ch. 111½, par. 6360—1.

The court must inform the defendant of the option of treatment whenever it has "reason to believe" that the defendant not excluded under the provisions of section 10—101 is an addict or alcoholic. (Ill. Rev. Stat. 1989, ch. 111½, par. 6360—2; *People v. Richardson* (1984), 104 Ill. 2d 8, 17, 470 N.E.2d 1024, 1029.) This court has found that "reason to believe," as used in this statute, is equivalent to probable cause. (*People v. Futia* (1983), 116 Ill. App. 3d 68, 452 N.E.2d 109.)

> "In dealing with probable cause, *** as the very name implies, we deal with probabilities. These are not technical; they are factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Brinegar v. United States* (1949), 338 U.S. 160, 175, 93 L. Ed. 1879, 1890, 69 S. Ct. 1302, 1310, quoted in *People v. Moody* (1983), 94 Ill. 2d 1, 7-8, 445 N.E.2d 275, 278.

The State argues that the court did not have probable cause to believe that defendant was either an addict or an alcoholic. Defendant testified to his history of drug and alcohol abuse, and the presentence investigation report restates this history together with defendant's related physical and mental problems, as well as briefly indicating defendant's prior treatment. The presentence report was based mostly on defendant's description of his problems.

"[N]otwithstanding their self-serving nature, a trial court must consider a defendant's statements which, while not affirmative statements that he is an addict, are tantamount thereto, in determining whether there is reason to believe that that is the case." *People v. Henry* (1990), 203 Ill. App. 3d 278, 287, 560 N.E.2d 1205, 1211.

In several cases the appellate court has affirmed sentences although the trial courts did not inform defendants with histories of drug or alcohol abuse of the possibility of electing treatment under the Act. The court found that the evidence of abuse in those cases did not amount to evidence of addiction. In *People v. O'Bannon* (1990), 195 Ill. App. 3d 430, 552 N.E.2d 109, the presentence investigation indicated no mental or physical health problems. In *People v. Atterberry* (1990), 201 Ill. App. 3d 641, 559 N.E.2d 193, the court held that the trial court had no obligation to inform a defendant of the option of sentencing under the Act "where the offender is in good health but, according to the presentence report, has used drugs in the past." *Atterberry*, 201 Ill. App. 3d at 646, 559 N.E.2d at 196.

In this case, by contrast, defendant testified to his problems of substance abuse and his prior treatment, and the report indicated defendant's substantial health problems, both mental and physical, related to his substance abuse. We are aware of no case in which a court found no reason to believe a defendant was an alcoholic after the defendant reported that he suffered from delirium tremens and hallucinations. We find that defendant's testimony and the presentence report, which indicate that defendant has a substantial history of drug and alcohol abuse, treatment for the abuse, and substantial physical and mental health problems related to the abuse of alcohol and drugs, gave the court reason to believe that defendant was an alcoholic or addict, within the meaning of the Act. (See *People v. Beasley* (1982), 109 Ill. App. 3d 446, 440 N.E.2d 961; *Henry*, 203 Ill. App. 3d at 284, 288, 560 N.E.2d at 1208, 1212.) Therefore, the court had a statutorily mandated duty to inform defendant of the possibility of sentencing under the Act.

We note that even if defendant accepts the sentencing option, he will not necessarily be sentenced to probation and treatment. (See *People v. Hirschmann* (1988), 175 Ill. App. 3d 150, 529 N.E.2d 760.) The defendant must first be examined by a treatment program, which will report its findings and recommendations to the trial court. The court must then consider the report and other relevant information and determine whether the defendant "is an addict or alcoholic and is likely to be rehabilitated through treatment." (Ill. Rev. Stat. 1989, ch.

111½, par. 6360—2.) Even if the court so finds, the defendant may not be entitled to the alternative sentencing if the court finds that imprisonment is necessary to protect the public or that the addiction had no significant relationship to the crime. (*Hirschmann*, 175 Ill. App. 3d 150, 529 N.E.2d 760.) We express no opinion on the resolution of these questions. We find only that there is enough evidence in the record that defendant may be an addict or alcoholic to set in motion the statutory scheme for determining whether defendant may be entitled to alternate sentencing for treatment.

Because the trial court failed to inform defendant of the sentencing option under the Act, the sentence is vacated and the cause is remanded for resentencing.

Affirmed in part; vacated in part and remanded.

HARTMAN, P.J., and DiVITO, J., concur.