THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
RICKY J. PULLIAM, Defendant-Appellant.

Second District   No. 2—92—0576

Opinion filed December 30, 1993.

G. Joseph Weller and Ingrid L. Moller, both of State Appellate Defender's Office, of Elgin, for appellant.

Paul A. Logli, State's Attorney, of Rockford (William L. Browers and Robert J. Biderman, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE QUETSCH delivered the opinion of the court:

Defendant, Ricky Pulliam, pleaded guilty to one count of robbery (Ill. Rev. Stat. 1989, ch. 38, par. 18—1(a) (now 720 ILCS 5/18—1(a) (West 1992))) for using force to steal a woman's purse. The trial court sentenced defendant to 11 years' imprisonment. On appeal, defendant argues that the trial court erred in denying his peti-

tion to receive treatment under the Treatment Alternative to Street Crime (TASC) program (see Ill. Rev. Stat. 1989, ch. 111½, par. 6360—1 (now 20 ILCS 305/10—101 (West 1992))).

The State presented the following factual basis to support defendant's guilty plea. On October 29, 1991, Officer Martini of the Rockford police department was working off duty at the Rockton Avenue Shopping Center. Martini observed two males exit a car and stand by a newspaper machine near the entrance to the Century Drug Store. Marilyn Moore and her daughter Lucinda Moore exited the store. Defendant grabbed Marilyn Moore's purse and ran in the opposite direction from Martini. Martini chased defendant, never loosing eye contact with him. Martini apprehended defendant and detained him until backup units arrived. The officers recovered Marilyn Moore's purse and returned it to her.

The trial court admonished defendant pursuant to Supreme Court Rule 402 (134 Ill. 2d R. 402) and accepted his guilty plea.

The presentence report reflected that defendant had the following criminal record. He was convicted in 1982 of robbery and theft and he received a sentence of four years' probation with five months' incarceration. His probation was subsequently revoked and he was sentenced to three years' imprisonment. In 1987, defendant was convicted of theft over $300. He received a sentence of 30 months' probation with 180 days' incarceration. In 1988, defendant was convicted of residential burglary and he received a sentence of four years' imprisonment. In 1991, defendant was convicted of theft and he received a sentence of 30 months' probation with 150 days' incarceration. Defendant was on probation when he committed the robbery at issue in this case.

The trial court held defendant's sentencing hearing on May 11, 1992. In aggravation, the State presented evidence that in October 1991 defendant stole two other women's purses and a man's checkbook. Defendant used force in stealing one of the purses.

Donald Allen, a TASC case manager, testified for defendant. Allen conducted two interviews with defendant where he and defendant discussed defendant's criminal history and his drug use. Based on these interviews, Allen determined that defendant had a drug-abuse problem. He initially thought that defendant would be a good candidate for TASC because he would benefit from treatment. Allen also testified that he had informed Gary Myers, defendant's probation officer, by letter that defendant was acceptable for TASC and that Allen was recommending an open treatment mandate. Myers, however, refused to consent to defendant's admission to the

TASC program. Primarily because of Myers's refusal to consent, TASC denied defendant admission to the treatment program. Allen further testified that, in 1988, TASC had also found defendant to be an acceptable candidate for treatment but had similarly refused to admit defendant to the program because his probation officer had refused to consent. Allen testified that, once the probation officer declines to consent, the case is closed.

On cross-examination, Allen testified that defendant did not show a likelihood for rehabilitation. Allen stated that when he sent the initial letter to Myers, he had not seen defendant's entire file. According to Allen, information in defendant's file reflected that defendant had not followed through on obtaining treatment in the past. For example, defendant had failed to show up for treatment on several occasions, including October 19, 1991. Allen testified that he did not have all of the relevant information until Allen saw defendant's file.

Myers testified that he denied consent to TASC treatment for defendant, first, because defendant had signed up for a TASC evaluation in October 1991 and had failed to appear for that appointment. Myers admitted that he did not think that there was a court order for defendant to meet with TASC at that time. Myers also declined to give his consent because defendant was placed on probation while he was on parole and then committed the present offense while he was on probation. Myers stated that, although he does not automatically decline to consent to TASC when an offender has violated his probation, defendant's record indicated that defendant would not likely be rehabilitated. Myers acknowledged that defendant had successfully completed a work-release program and that defendant had attempted to obtain treatment in the TASC program in 1988.

Defendant testified that he was 32 years old and had been a drug addict for at least the past 10 years. He primarily used cocaine. He testified that he showed up at his appointment with TASC in October 1991, but a TASC employee informed him that TASC only accepted clients pursuant to court order. The TASC employee referred him to PHASE. Defendant went upstairs and set up an appointment with PHASE for November 5, 1991. He was unable to appear for that appointment, however, because on November 5, 1991, he was in jail on the present charge. Defendant stated that he had explained to both Myers and Allen that he had attempted to go to his TASC and PHASE appointments.

Defendant also testified that while he was in the work-release program he went to Narcotics Anonymous meetings. At that time he did not feel that he needed more intense treatment, nor did he have the money to pay for inpatient treatment. Defendant also testified that he attended Alcoholics Anonymous meetings in jail. Defendant claimed that he committed the robberies "[d]ue to my habit and lack of responsibility."

The trial court found that Myers' refusal to consent to defendant's admission to the TASC program was not arbitrary or capricious. The trial court also found "there to be a lack of rehabilitation." The trial court therefore denied defendant's request for admission into the TASC program. The trial court further found that defendant was eligible to be sentenced as a Class X offender because he had two previous Class 2 felony convictions. (Ill. Rev. Stat. 1989, ch. 38, par. 1005—5—3(c)(8) (now 730 ILCS 5/5—5—3(c)(8) (West 1992)).) The trial court sentenced defendant to 11 years' imprisonment. The trial court subsequently denied defendant's motion to reconsider his sentence.

■ Section 10—101 of the Illinois Alcoholism and Other Drug Dependency Act (Act) provides that, with certain exceptions, "[a]n addict or alcoholic who is charged with or convicted of a crime may elect treatment under the supervision of a licensed program designated by the [Illinois Department of Alcoholism and Substance Abuse]." (Ill. Rev. Stat. 1989, ch. 111½, par. 6360—1 (now 20 ILCS 305/10—101 (West 1992)).) One such exception which disqualifies an offender from participating in the program is that "the person is on probation or parole and the appropriate parole or probation authority does not consent to that election." (Ill. Rev. Stat. 1989, ch. 111½, par. 6360—1(e) (now 20 ILCS 305/10—101(e) (West 1992)).) The cooperation of defendant's probation officer is essential to the success of any alternative treatment because the probation officer is responsible for supervising defendant while defendant is not in custody. *People v. Phillips* (1977), 66 Ill. 2d 412, 417-18; *People v. Hamilton* (1987), 155 Ill. App. 3d 555, 558.

Section 10—102 of the Act provides that, if the court determines that the defendant is eligible to elect treatment under section 10—101, and if the defendant elects such treatment, the court, with the assistance of a program such as TASC, must still determine whether a treatment alternative is appropriate. (Ill. Rev. Stat. 1989, ch. 111½, par. 6360—2 (now 20 ILCS 305/10—102 (West 1992)); accord *People v. House* (1992), 232 Ill. App. 3d 309, 313.) The legislature did not intend that all defendants who also hap-

pened to be drug addicts would have an absolute right to obtain a treatment alternative under the Act. *People v. Mims* (1992), 225 Ill. App. 3d 488, 495.

Defendant acknowledges that he was on probation at the time he committed the present offense and that he therefore was ineligible for admission to the TASC program without the consent of Myers, his probation officer. Defendant argues, however, that the trial court erred in refusing to admit him to the TASC program because Myers' refusal to consent to his admission to TASC was arbitrary and capricious. First, defendant argues that Myers' decision was not based on well-founded facts. According to defendant, Myers primarily refused to consent to defendant's admission to TASC because of defendant's failure to attend his first TASC meeting on October 16, 1991. However, defendant testified that he had attempted to attend this meeting but had been turned away because there was no court order for him to attend the TASC program. Defendant also argues that the trial court's finding that he would not be rehabilitated was error because defendant had successfully completed a nine-month work-release program and he had been denied the opportunity to participate in drug treatment in the past.

■ Under the Act, a probation officer's reasons for refusing to consent to a treatment alternative are not subject to judicial review. (*Hamilton*, 155 Ill. App. 3d at 561.) A probation officer need not even provide reasons for his refusal to consent to a treatment alternative. (*Hamilton*, 155 Ill. App. 3d at 561.) It has been held that endowing the probation department with an absolute veto over a defendant's admission to a treatment program under the Act does not constitute an improper delegation of the courts' sentencing authority. (*Hamilton*, 155 Ill. App. 3d at 561.) This is so because the Act does not actually provide for sentences. Instead, the Act provides for alternatives to the sentences available under the Unified Code of Corrections. *Phillips*, 66 Ill. 2d at 416; *Hamilton*, 155 Ill. App. 3d at 561.

The trial court, therefore, properly denied defendant's petition for admission to the TASC program based on the probation officer's refusal to consent. We also note that the trial court heard all of the testimony and found that Myers' decision to deny defendant's admission to TASC was not arbitrary and capricious. The trial court additionally found that defendant would not likely be rehabilitated through treatment. Even in cases where we disagree with a particular sentence, we are without authority to modify that sentence unless the trial court abused its discretion. (*People v. McCain* (1993),

248 Ill. App. 3d 844, 850.) In light of defendant's extensive criminal history, the trial court's decision to deny defendant admission to the TASC program was not an abuse of discretion. Therefore, even if Myers' decision were subject to judicial review, we would not disturb the sentence that the trial court imposed.

The judgment of the circuit court of Winnebago County is affirmed.

Affirmed.

BOWMAN and GEIGER, JJ., concur.